IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALTERNATIVE MEDICINE AND PHARMACY, INC. d/b/a OMNIPLUS PHARMACY,<br><br>    Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS, INC. and MEDCO HEALTH SOLUTIONS, INC.,<br><br>    Defendants. | Case No. 4:14-cv-01469-CDP |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFF'S FAILURE TO SHOW DAMAGES**

Defendants Express Scripts, Inc. and Medco Health Solutions, Inc. (collectively "Express Scripts") respectfully submit this memorandum of law in support of their motion for summary judgment based on Plaintiff Alternative Medicine and Pharmacy, Inc.'s ("OmniPlus") failure to show damages.

**INTRODUCTION**

If the Court grants Express Scripts' motion for summary judgment on the merits of OmniPlus' claims (Doc. No. 110), then disposition of this motion is unnecessary – the Court will have concluded that Express Scripts had a right to terminate the parties' contract and that notice was proper under the terms of the contract and circumstances of this case. In other words, the Court will have concluded, as to notice, that the purported exceptions set forth in the Texas Regulatory Addendum of the parties' contract do not swallow the rule that Express Scripts had a right to immediately terminate OmniPlus from its pharmacy provider network because OmniPlus' breached the parties' contract.

SLC-7719333

If Express Scripts' motion for summary judgment on the merits is denied for any reason, however, then the fact that the parties' contract was terminable by Express Scripts without cause sharply limits the damages that OmniPlus could recover.  Indeed, Missouri law is crystal clear that, because the contract was terminable without cause, damages extending beyond the applicable without cause notice period were not contemplated by the parties and therefore may not be recovered by OmniPlus.

As explained below, seventy-four days elapsed between Express Scripts' termination notice and the effective date of OmniPlus' termination from Express Scripts' pharmacy provider network.  At best, OmniPlus would have been entitled to ninety days notice of termination, and therefore sixteen days additional notice, if the Texas Regulatory Addendum applies as OmniPlus suggests.  Thus, OmniPlus' damages, if any, are limited to those flowing directly from any deficient notice (and not the termination itself), to the extent that OmniPlus can demonstrate the applicability of the Texas Regulatory Addendum to its business during that time period.

As it happens, OmniPlus lacks the evidence necessary to show damages in accordance with Missouri law and the Texas Regulatory Addendum.  OmniPlus has no evidentiary basis to tie its purported damages to any deficient notice, regardless of the time period.  And, OmniPlus has no evidentiary basis to show damages within the scope of the Texas Regulatory Addendum, *i.e.*, damages pertaining to services rendered to Express Scripts members who receive coverage through an HMO licensed under Texas law.  Instead, OmniPlus believes that it is entitled to a multi-million-dollar windfall in lost profits, projected well into the future, despite the reality that the parties' contract was indisputably terminable without cause under any set of facts.

Because OmniPlus has not taken this reality into account, it has no evidence of damages under the contract that comports with the applicable law. Accordingly, the Court should enter summary judgment for Express Scripts.

## FACTUAL BACKGROUND

Express Scripts assumes the Court's familiarity with much of the factual background pertinent to this case and this motion. Express Scripts notified OmniPlus on July 31, 2014 that, effective September 1, 2014, OmniPlus would be terminated from Express Scripts' pharmacy provider network. *See* Express Scripts' Statement of Uncontroverted Material Facts ("SUMF") ¶ 2. On August 28, 2014, the parties agreed to stay the termination pending the Court's ruling on OmniPlus' motion for a preliminary injunction. *Id.* ¶ 3; Ex. A ¶ 2 & Ex. 1. The Court denied OmniPlus' motion for a preliminary injunction on October 7, 2014. Doc. No. 59, *reported at Alt. Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, 2014 WL 4988199 (E.D. Mo. Oct. 7, 2014)). Express Scripts then terminated OmniPlus effective October 13, 2014. SUMF ¶ 4; Ex. D ¶ 5.

In its October 7, 2014 Memorandum and Order, the Court recognized that "[t]his is a standard breach of contract case in which the parties to the contract specifically contemplated that Express Scripts could terminate it." *Alt. Med. & Pharmacy*, 2014 WL 4988199, at *8. The Court additionally recognized that, under the Provider Agreement, Express Scripts had the right to terminate OmniPlus without cause, *i.e.*, for any reason or no reason, on thirty days notice. *See Alt. Med. & Pharmacy*, 2014 WL 4988199, at *2 n.6; *see also* SUMF ¶ 5. Further, the Court recognized that if the termination provisions in the Texas Regulatory Addendum of the Provider Manual apply – *i.e.*, a ninety day notice period applied "[t]o the extent [OmniPlus] provides services … to Members of an HMO licensed under Texas law…." and "with respect to those services provided to Members" of such an HMO (SUMF ¶¶ 6-7) – then "Express Scripts could

3

provide, as its 'written explanation' for the reason for the termination, that it was exercising its right, under § 4.2.a of the Provider Agreement, to terminate without cause." *Alt. Med. & Pharmacy*, 2014 WL 4988199, at *6 n.8.

In short, seventy-four days passed between Express Scripts' July 31, 2014 termination notice and the effective date of OmniPlus' termination on October 13, 2014. Had Express Scripts provided ninety days notice, the effective date would have been October 29, 2014. Any deficient notice, then, is limited to a period of sixteen days. As explained in detail below, OmniPlus' damages expert has conceded that OmniPlus has not proffered evidence of damages (a) stemming from any deficient notice or (b) within the scope of the Texas Regulatory Addendum. Accordingly, OmniPlus has no evidence with which to prove legally recoverable damages.

## **LEGAL STANDARD**

The standards for summary judgment are well-established:

- Summary judgment should be entered where "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

- "A moving party always bears the burden of informing the Court of the basis for its motion." *L.C. Goliday v. GKN Aerospace-St. Louis Aerospace*, 2012 WL 2885358, at *3 (E.D. Mo. July 13, 2012) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). However, "[o]nce the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the 'mere existence of some alleged factual dispute.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

- To survive a motion for summary judgment, the "nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241

4

(8th Cir. 1995), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (citations omitted).

- "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Critically for purposes of this motion: "The proper measure of damages is a question of law for determination by the Court, and the particular facts and circumstances of each case dictate which measure of damages is appropriate." *Garvin v. Acuity*, 2012 WL 5197223, at *3 (W.D. Mo. Oct. 19, 2012) (citing *Asamoah-Boadu v. State*, 328 S.W.3d 790, 796 (Mo. Ct. App. 2010); *Forney v. Mo. Bridge & Concrete, Inc.*, 112 S.W.3d 471, 474 (Mo. Ct. App. 2003)) (addressing and disposing of parties' disagreement over the proper measure of damages on defendant's motion for partial summary judgment regarding the issue).

## ARGUMENT

**I.     If OmniPlus Establishes a Breach Based On the Purportedly Deficient Notice Of Termination, Then Any Damages Incurred by OmniPlus Are Limited to Those Flowing From the Purportedly Deficient Notice.**

Under well-settled Missouri law, where a contract is terminable without cause upon a certain period of notice, a party may not recover lost profits damages beyond that notice period. This is true even where the terminating party purported to terminate with cause and did so in error, because the notice period is dispositive of the damages period specifically contemplated by the contracting parties.  *See Asamoah-Boadu*, 328 S.W.3d at 796-97 (discussing authority) (finding that, because the parties' agreement could be cancelled by the defendant without cause on thirty days notice, "the parties simply did not contemplate lost profits damages exceeding thirty days"); *see also Mach. Maint. & Equip. Co. v. Cooper Indus., Inc.*, 634 F. Supp. 367, 371 (E.D. Mo. 1986) (*relied upon in Asamoah-Boadu*, 328 S.W.3d at 796-97 and applying Missouri law) (granting defendant's motion for partial summary judgment limiting plaintiff's damages to

the without cause termination period, because the parties' contract was terminable without cause on ninety days notice).

*Asamoah-Boadu* is on point.  In that case, the State of Missouri, Office of Administration ("OA") terminated multiple contracts with Sam's Janitorial Service ("SJS"), under which SJS performed janitorial services in various State of Missouri buildings.  328 S.W.3d at 791.  "[T]he contracts contained a provision allowing the OA to terminate the contracts for any reason with thirty days notice."  *Id*. at 792.  The OA notified SJS via letters dated March 6, 2007 that it was cancelling the parties' contracts that day for cause.  *See id*. at 796.  The purported "cause" was that SJS violated federal law by employing undocumented workers.  *See id*. at 793-95.  In fact, however, OA was unable to demonstrate a breach by SJS justifying termination for cause and, accordingly, OA itself "breached the contracts with [SJS] when it terminated them."  *Id*. at 795.

Nevertheless, the *Asamoah-Boadu* court concluded that, even though "OA had no cause to terminate the contracts" on March 6, 2007, its March 6, 2007 letters to SJS "provide[d] effective written notice to [SJS] that the contracts were terminated, albeit without the required notice."  *Id*. at 796.  As a result, SJS "was entitled to recover damages naturally or proximately resulting from the breach, which under the facts of the case was ***not the termination itself but rather the failure to provide thirty-days notice*** required by the terms of the contracts."  *Id*. (citing *Mach. Maint. & Equip. Co.*, 634 F.Supp. at 371) (emphasis added).  SJS's "lost profit damages should have been limited, therefore, to the contractual notice period of thirty days."  *Id*. (citing *Mach. Maint. & Equip. Co.*, 634 F. Supp. at 371; *Buckley v. Coe*, 385 S.W.2d 354, 359 (Mo. Ct. App. 1964)).

In other words, although OA's March 6, 2007 notices of immediate termination were erroneous because OA lacked cause to terminate the contracts, those notices still started the

6

running of a thirty-day clock – the without cause notice period – during which SJS could recover lost profits damages.  *Id*. at 796.[1]  Because the without cause notice period demonstrated that "the parties simply did not contemplate lost profits damages exceeding thirty days," "[a]warding lost profits for a period longer than thirty days elevated [SJS] to a better position than it would have been in had the OA given the required amount of notice of termination."  *Asamoah-Boadu*, 328 S.W.3d at 796-97; *see also id*. at 798 (Ahuja, J., concurring) (citing cases; footnote omitted) ("The majority of cases involving this situation – a defective for-cause termination – appear to reach the same result we do here, and hold that the terminated party's damages are limited to the notice period contained in the termination-without-cause provision.").

So it is here.  Express Scripts' July 31, 2014 termination notice started the running of, at best for OmniPlus, a ninety-day clock as purportedly provided for in the Texas Regulatory Addendum.  The Texas Regulatory Addendum does not affect Express Scripts' right to terminate the parties' contract without cause:  "Express Scripts could provide, as its 'written explanation' for the reason for the termination, that it was exercising its right, under § 4.2.a of the Provider Agreement, to terminate without cause."  *Alt. Med. & Pharmacy*, 2014 WL 4988199, at *6 n.8.  There can be no legitimate dispute that Express Scripts' July 31, 2014 termination notice was an "effective written notice to [OmniPlus] that the contract[] [would be] terminate[d]" (*Asamoah-Boadu*, 328 S.W.3d at 796), as evidenced by, *e.g.*, the fact that OmniPlus filed this lawsuit prior to the effective date of termination and immediately sought to enjoin its termination.

---

[1] *Cf. also, e.g.*, *Martin v. Holloran*, 2010 WL 5300999, at *8 (E.D. Mo. Dec. 20, 2010) (Under Missouri law, a breach of contract action accrues "when damage is capable of ascertainment, that is, when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.") (quotations omitted); *Levi v. Anheuser-Busch Co. Inc.*, 2008 WL 4816668, at *3 (W.D. Mo. Oct. 27, 2008) (citing cases) ("In Missouri, the statute of limitations for any wrongful discharge claim begins to run on the date of notice of termination.").

7

Thus, on July 31, 2014, the clock started ticking toward ninety days.  OmniPlus was not terminated until seventy-four days later on October 13, 2014.  To the extent, then, that OmniPlus was entitled to ninety days notice, the deficiency amounts to a mere sixteen days.  At most, therefore, OmniPlus would be entitled to "recover damages naturally or proximately resulting from the breach, which under the facts of the case [is] not the termination itself but rather the failure to provide" only seventy-four days notice as opposed to the ninety days supposedly required by the Texas Regulatory Addendum.  *Asamoah-Boadu*, 328 S.W.3d at 796.  If OmniPlus can show that it was damaged by Express Scripts' purported failure to provide sixteen days additional notice under the Texas Regulatory Addendum "with respect to those services provided to Members … of an HMO licensed under Texas law" (SUMF ¶¶ 6-7), the law is clear that OmniPlus may recover those damages, but nothing more.

**II.    OmniPlus Has No Evidence of Damages Stemming From Deficient Notice Under the Texas Regulatory Addendum.**

The failure to supply proper evidence of damages is a well-settled basis for dismissal of claims which seek monetary damages.  *See, e.g.*, *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 688-91 (8th Cir. 2009) (affirming pre-trial dismissal of breach of contract claim because plaintiff failed to submit admissible evidence of damages); *Cent. Am. Health Sciences Univ., Belize Med. Coll. v. Norouzian*, 236 S.W.3d 69, 84-86 (Mo. Ct. App. 2007) (reversing damages award on breach of contract claim because plaintiff's evidence of damages was insufficient as a matter of law).

OmniPlus has no evidence of damage consistent with the proper legal measure set forth in Part I for two reasons.  ***First***, OmniPlus has not produced evidence of damages caused by any failure to provide notice; rather, OmniPlus' evidence of damages is improperly premised on purported damage caused by the termination itself.  But, because Express Scripts was entitled to

8

terminate the contract without cause, OmniPlus is only entitled to recover damages "naturally and proximately resulting from the failure" to provide ninety days notice and "not the termination itself." *Asamoah-Boadu*, 328 S.W.3d at 796 (citing *Mach. Maint. & Equip. Co.*, 634 F.Supp. at 371). **Second**, OmniPlus has not produced evidence of damages cognizable under the Texas Regulatory Addendum – *i.e.*, damages "with respect to those services provided to Members … of an HMO licensed under Texas law." SUMF ¶ 6. But Missouri law requires OmniPlus to establish these conditions in order to recover damages under the contract. *See, e.g.*, *Total Econ. Athletic Mgmt. of Am., Inc. v. Pickens*, 898 S.W.2d 98, 107 (Mo. Ct. App. 1995) (affirming trial court's restriction on damages evidence where appellant "fail[ed] to adequately establish occurrence of the requisite contingencies" to recover damages under the contracts at issue).

OmniPlus has offered up evidence of lost profits damages through one source – its damages expert Christopher Volz. Mr. Volz was deposed on September 1, 2015. Mr. Volz understood in broad terms that deficient notice was at issue in this case (SUMF ¶ 8), but his damages analysis was ***not*** premised on any failure to provide adequate notice. Rather, Mr. Volz "calculate[d] lost profits associated with the termination of the contract between OmniPlus and ESI" by "analyz[ing] and quantify[ing] lost profits resulting from ESI's purported termination of its contract with Express Scripts." *Id.* ¶ 9. In other words, Mr. Volz calculated damages resulting from the "termination itself" and, as explained in Part I, *supra*, damages resulting from the "termination itself" are ***not*** the proper measure of damages as a matter of law.

In any event, Mr. Volz did not tie any of OmniPlus' purported damages to the conditions in the Texas Regulatory Addendum. Mr. Volz did not "consider what percentage of OmniPlus's patients for whom it had filled prescriptions were members of an HMO licensed under Texas

9

law." *Id*. ¶ 10.  Mr. Volz was not "able to say how many of the Express Scripts prescriptions that OmniPlus filled in any given month … were filled for patients who were members of an HMO licensed under Texas law." *Id*. ¶ 11.  Mr. Volz was not "able to say how much of the total ESI participant revenue that OmniPlus received in any given month … was from patients who were members of an HMO licensed under Texas law." *Id*. ¶ 12.  Mr. Volz knew only that it was somewhere between (a) zero and (b) the total revenues he calculated.  *See id*.  And, predicting into the future, Mr. Volz had no idea "how many of [OmniPlus'] projected prescriptions would have been filled for members of an HMO licensed under Texas law" or what percentage of OmniPlus' "lost ESI revenues … would relate to prescriptions filled for members of an HMO licensed under Texas law." *Id*. ¶¶ 13; 15.  Ultimately, Mr. Volz lacked "any basis" to distinguish "lost ESI revenues for patients who were members of an HMO licensed under Texas law versus lost ESI revenues for patients who were not members of an HMO licensed under Texas law." *Id*. ¶ 14.

In short, OmniPlus has no evidence of damages properly calculated in accordance with Missouri law.  And, even if OmniPlus had applied the proper legal measure of damages to its damages calculations, OmniPlus has no evidence to demonstrate damages suffered under the Texas Regulatory Addendum, which OmniPlus itself opted to inject into this dispute.  Because OmniPlus lacks proper evidence of damages, the Court should enter summary judgment for Express Scripts.  *See US Salt*, 563 F.3d at 688-91.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that the Court grant their motion for summary judgment based on Plaintiff's failure to show damages.

Dated:  December 7, 2015             **HUSCH BLACKWELL LLP**

By:  /s/ Kyle P. Seelbach
    Kyle P. Seelbach, #60382MO
    Sarah C. Hellmann, #50373MO
    Jason Husgen, #66761MO
    190 Carondelet Plaza, Suite 600
    St. Louis, MO  63105
    (314) 480-1500 Telephone
    (314) 480-1505 Facsimile
    kyle.seelbach@huschblackwell.com
    sarah.hellmann@huschblackwell.com
    jason.husgen@huschblackwell.com

*Attorneys for Defendants Express Scripts, Inc. and Medco Health Solutions, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 7th day of December, 2015, the foregoing was filed electronically with the Clerk of Court, to be served by operation of the Court's electronic filing system upon the following:

Douglas W. King
Erin M. Leach
SHANDS, ELBERT, GIANOULAKIS
& GILJUM, LLP
1 North Brentwood Blvd., Suite 800
St. Louis, MO 63105

*Counsel for Plaintiff*

                                                         /s/ Kyle P. Seelbach