UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALTERNATIVE MEDICINE | ) | |
| AND PHARMACY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14 CV 1469 CDP |
| | ) | |
| EXPRESS SCRIPTS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Alternative Medicine and Pharmacy, Inc., d/b/a Omniplus

Pharmacy (Omniplus) is a community and compounding pharmacy with a mail

order business. Defendants Express Scripts, Inc., and Medco Health Services, Inc.

(collectively referred to as Express Scripts) are pharmacy benefits managers.

Omniplus had a contract with Express Scripts to provide pharmacy services to

members of health plans managed by Express Scripts.

In July of 2014 Express Scripts notified Omniplus that it was terminating the

contract effective September 1, 2014 because Omniplus had misrepresented in a

re-credentialing processs whether it discounted or waived copayments. Omniplus

responded that under a Texas-specific addendum to the contract it was entitled to

90 days notice and a review before Express Scripts could terminate the contract.

Express Scripts refused to provide the requested review.

Omniplus filed this lawsuit on August 24, 2014, and sought to enjoin the termination. Omniplus alleged that Express Scripts breached the contract by purporting to terminate the contract on 30 days notice, without an adequate written explanation, and by failing to conduct the requested review. It also alleged (in Count II) that Express Scripts violated two provisions of the Texas Insurance Code. I denied Omniplus' requests for a temporary restraining order and for a preliminary injunction. Express Scripts then filed a counterclaim, alleging that Omniplus had breached the contract by failing to collect copayments.

The case is set for trial on April 4, 2016, and before me now are the parties' various motions for summary judgment. It is undisputed that Omniplus failed to collect between 75% and 85% of the copayments due, but the legal consequences of this failure are hotly contested. I conclude that numerous factual disputes preclude summary judgment on Omniplus' breach of contract claim in Count I.

Omniplus did not oppose the portion of Express Scripts' motion for summary judgment on Count II of the complaint, apparently conceding – as it should – that there is no private right of action under the two provisions of the Texas Insurance Code, and so I will grant that motion only as to Count II.

I will also grant summary judgment to Omniplus on Express Scripts' counterclaim because Express Scripts has not shown that it was damaged by any breach of contract by Omniplus. Express Scripts' only claim for damages is a

claim that Omniplus must pay back all amounts Express Scripts paid it on claims where copayments were not collected, plus a 15% penalty.  It is undisputed that Omniplus actually provided the prescriptions to the patients and that the amounts Express Scripts paid Omniplus were the correct payments and were authorized by Express Scripts' clients.  Even if I assume Omniplus breached the contract by not collecting copayments, there is no evidence that the breach caused the damages Express Scripts claims, and Express Scripts has not provided evidence of any other damages.  This failure of proof is fatal to the breach of contract counterclaim.

Standards Governing Summary Judgment

The standards for summary judgment are well settled. In ruling on summary judgment, the Court views the facts and inferences therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U .S. 574, 587 (1986).  The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).  At the summary judgment stage, I will not weigh the evidence and decide

the truth of the matter, but rather I need only determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *ASi Industries GmbH v. MEMC Electronic Materials, Inc.*, 2008 WL 413819, *1 (E.D. Mo. Feb. 13, 2008).

<u>Background Facts</u>

Compounding pharmacies like Omniplus have the ability to mix multiple drugs or active ingredients to create a medication specifically tailored to a patient's needs. Pharmacy benefit managers like Express Scripts manage and attempt to reduce pharmacy reimbursement expenses for member claims on behalf of health plan administrators and third-party payors such as insurance companies, employers, and health maintenance organizations.[1] Express Scripts is the largest pharmacy benefit manager in the United States. Omniplus had a contract (Provider Agreement) with Express Scripts to provide pharmacy services to members of health plans managed by Express Scripts. The parties' relationship was also governed by a Provider Manual.

In the spring of 2014 Express Scripts required Omniplus to complete a Provider Certification form, which Omniplus submitted on March 4, 2014. Question # 29 asked whether "you or your pharmacy(ies) ever waive or offer a reduction of member copayments"? Omniplus answered, "No." After receiving

---

[1] Express Scripts also competes with Omniplus directly in the mail-order pharmacy business.

the certification form, Express Scripts contacted some members who used Omniplus' mail-order delivery service and asked these members whether they had paid the required copayments for these prescriptions. One member told Express Scripts that he was informed by Omniplus that Omniplus "would send an invoice but wouldn't try to collect," so that member did not fill his prescription with Omniplus. Three other members filled prescriptions using Omniplus' mail-order pharmacy in March, but had not received bills for their copayments as of May 29, 2014. Based on this information, Express Scripts notified Omniplus that it was being terminated for cause for misrepresenting that it did not waive or discount copayments.

For prescriptions filled by mail, Omniplus typically contacted a patient by phone, informed the patient of the copayment, and then asked whether the patient was going to pay over the phone at that time. If the patient declined immediate payment, an invoice was sent by mail with the medication and an account receivable was created. Omniplus' invoices do not have a due date, and Omniplus does not send follow-up invoices for unpaid copayments, charge interest on unpaid balances, or send any unpaid accounts to collection agencies. Accounts are also recorded as "current" on Omniplus' books, even if there is an unpaid balance.

In response to the termination notice, Omniplus protested that it did not waive or discount copayments and sought internal review of the termination

decision under Texas law.  Express Scripts declined to provide any internal review process.  Omniplus then filed this case alleging breach of contract and violations of Texas law.  Express Scripts filed its own breach of contract counterclaim, alleging that Omniplus breached the Provider Agreement by failing to collect all copayments.  Omniplus admits that it has not collected all copayments due and owing from patients – and admits that for the relevant time period cited it failed to collect between 75% and 85%[2] of the copayments that were due – but contends that the contract does not require it to do so or to take any particular collection efforts.  Express Scripts argues that failing to collect all copayments amounts to a waiver or discounting of copayments, and that in any event, the Provider Agreement affirmatively requires Omniplus to collect all copayments.

Relevant Contract Provisions

Section 2.4 of the Provider Agreement is entitled "Collection of Copayments; Member Hold-Harmless; Violation" and states that Omniplus "shall collect from Members the lesser of the Usual and Customary Retail Price amount or the applicable Copayment indicated by [Express Scripts], or when applicable, the full Copayment when indicated by [Express Scripts], through its online processing system or if online processing is unavailable, in accordance with the

---

[2] For prescriptions dispensed between September 27, 2013 and June 30, 2014, Omniplus failed to collect the required copayment for approximately 84.37% of these prescriptions. For prescriptions dispensed between July 1, 2014 and October 7, 2014, Omniplus failed to collect the required copayment for approximately 75% of these prescriptions.

Provider Manual." It further provides that "[c]opayments may not be waived or discounted and, unless directed by [Express Scripts] in writing, [Omniplus] shall not collect any greater amount or other taxes, fees, surcharges, or compensation from any Member for any Covered Medications or services provided in connection therewith." Finally, it makes clear that, "[i]n no event will [Express Scripts] be liable for any Copayment." Section 2.2 of the Provider Manual, entitled "Collection of Copayments," states as follows:

> [Express Scripts] defines patient responsibility to be the amount of money a Network Provider is to collect from a Member for the provision of Covered Medications. This amount can include Copayment . . . . Sponsors determine the Copayment amounts to be collected. Copayment amounts vary from Sponsor to Sponsor and/or Prescription Drug Program. Network Provider shall ensure that the correct Copayment is charged to the Member and is not changed or waived . . . . Network Provider may not institute Member copayment discount program or otherwise alter a Member Copayment, unless such waiver or discount is required by law. If [Express Scripts] becomes aware of any copayment or cost-sharing discounts being offered by Network Provider – either through audit, investigation, Member statements, or review of Network Provider's website or other advertising materials – Network Provider may be subject to immediate termination. For clarification, if [Express Scripts] identifies fliers, advertisements, or other statements from Network Provider suggesting that copayments will be a flat fee or that copayments will be discounted, capped, or waived, Network Provider will be subject to termination.

Section 4.2 of the Provider Agreement provides Express Scripts with an immediate right to terminate Omniplus from the provider network in the event that:

1. Omniplus "fails to comply with [Express Scripts'] policies and procedures, including, but not limited to, the Provider Manual";

2. Omniplus "fails to comply . . . with Section 2.4 of this Agreement [dealing with copayments]; or

3. Omniplus "no longer meets credentialing requirements."

The Provider Manual contains a similar provision, except it also includes a right to immediate termination upon notice if "any representation to [Express Scripts] or any response to a question set forth on the Provider Certification is untrue or becomes untrue," or if Omniplus "breaches any of its representations and warranties set forth in this Agreement or any other document provided to Omniplus." Section 4.2 of the Provider Agreement permits Express Scripts to terminate Omniplus without cause upon 30 days written notice, or longer if required by law.

The Provider Manual also includes a Texas-specific addendum. Section 5 of the addendum states that "the Provider Agreement is hereby amended, as required by and consistent with law, **so that the following rules and requirements are included and shall apply** with respect to those services provided to Members. In the event there is a conflict between the terms and conditions set forth in this Addendum and the terms and conditions set forth in the Provider Agreement (including the Provider Manual), the terms and conditions set forth in this Addendum shall control." (emphasis supplied). The "following rules and requirements" include as follows:

5.1 [Express Scripts] shall provide a written explanation to [Omniplus] of the reason(s) for termination at least ninety (90) days prior to the effective date of such termination to the extent required by law. On request . . . and before the effective date of the termination, and within at most sixty (60) days of request, [Omniplus] shall be entitled to such review and formal, though non-binding, recommendation from [Express Scripts] in accordance with, and to the extent required by, 28 T.A.C. 3.3703(a)(19), except . . . in a case of fraud or malfeasance.

5.2 Any notice of termination by [Express Scripts] shall include [Omniplus'] right to request, within thirty (30) days of receipt of the termination notice, a review by insurer in accordance with, and to the extent required by 28 T.A.C. § 3.3706(h), 3.9204(g), Tex. Admin. Code 843.307.

Threshold credentialing is required for membership in Express Scripts' pharmacy provider network, as is periodic recredentialing. The credentialing process relies, in part, on Provider Certifications, which must be completed by would-be and existing pharmacy provider network members. Provider Certifications include questions concerning the type of services a pharmacy offers, pharmacist discipline, and general pharmacy business practices. By submitting a Provider Certification, a pharmacy such as Omniplus certifies that the information provided is "true and correct" and agrees to "notify Express Scripts immediately in writing" if any part of the certification becomes "untrue or inaccurate." A pharmacy also agrees that the failure to notify Express Scripts of any change in its Provider Certification "will be considered a breach of my Provider Agreement and could result in disciplinary action including, but not limited to, immediate termination of my Provider Agreement."

## Discussion

### A. Omniplus' Count II – Texas Statutes

Omniplus offers no opposition to Express Scripts' argument that it has no private right of action to enforce Texas Insurance Code Sections 843.306 and 1301.057 and accompanying regulations (28 T.A.C. §§ 3.3703(a)(19), 3.3706(d), and 11.901(a)(4)) as pleaded in Count II of the complaint. For the reasons set out at pages 22 and 23 of Express Scripts' brief [111], I conclude that there is no private right of action to enforce the cited statute and regulations and will therefore enter summary judgment in favor of Express Scripts on Count II of the complaint.

### B. Omniplus' Count I – Breach of Contract

The parties agree that Missouri law governs the breach of contract claims. "A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Missouri Military Academy*, 304 S.W.3d 98, 104 (Mo. banc 2010).

In construing a contract, a court must give all contract terms their plain and ordinary meaning and consider the whole document. *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. 2008); *Jackson County v. McClain Enters.*, 190 S.W.3d 633, 640 (Mo. Ct. App. 2006). Whether a contract is ambiguous is a

question of law.  *Id.*  Courts must not interpret contract provisions in isolation but rather evaluate the contract language as a whole.  *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009).  "The test for determining if an ambiguity exists in a written contract is whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain meaning as understood by a reasonable average person."  *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 801 (8th Cir. 2004).  That parties may disagree on the interpretation of a contract does not render it ambiguous.  *Windsor Ins. Co. v. Lucas*, 23 S.W.3d 151, 153 (Mo. Ct. App. 2000).  If a contract provision "is susceptible to two interpretations, only one of which is reasonable, the reasonable interpretation should be given effect."  *Parker v. Pulitzer Pub. Co.,* 882 S.W.2d 245, 250 (Mo. Ct. App. 1994).

Express Scripts argues that Omniplus' breach of contract claim must fail because Omniplus cannot show it performed under the contract, as it admittedly did not collect all copayments.  Express Scripts argues that Section 2.4 of the Provider Agreement imposes such a requirement on Omniplus because it states that Omniplus "**shall collect . . .** the applicable Copayment . . . ." (emphasis supplied by Express Scripts).  According to Express Scripts the word "shall" unambiguously obligates Omniplus to perform the act of collection, which according to Merriam-Webster's College Dictionary means "to claim as due and

receive payment for." [111 at 17]. Express Scripts contends that its interpretation of the contract is reinforced by Section 2.2 of the Provider Manual, which includes the following provision: "[Express Scripts] defines patient responsibility to be the amount of money a Network Provider **is to collect** from a Member for the provision of Covered Medications. This amount can include Copayment . . . . Sponsors determine the Copayment amounts **to be collected**." (emphasis again supplied by Express Scripts). Express Scripts does not explicitly argue that Omniplus was required to collect 100% of the copayments and that any failure, no matter how minimal, would be grounds for termination. Its argument, however, logically leads to that conclusion. Express Scripts also, however, cites to certain federal health statutes and Medicare regulations (none of which apply to this case) for the proposition that "reasonable" collection efforts are required, which would imply that it believes something short of 100% recovery of copayments might be allowed under the contract. Express Scripts avoids taking a firm position on this threshold issue of contract interpretation.

Omniplus disputes Express Scripts' interpretation of the contract, and says that so long as it *billed* its clients for the copayments, it satisfied the contract. Omniplus notes that the purpose of Section 2.4, entitled "Collection of Copayments; Member Hold-Harmless; Violation" is really a hold-harmless provision preventing Express Scripts from being held liable to Omniplus for

copayments.  According to Omniplus, the relevant emphasis to be placed on this provision is that it "shall collect **from Members** the lesser of the Usual and Customary Retail Price amount or the applicable Copayment indicated by [Express Scripts], or when applicable, the full Copayment when indicated by [Express Scripts], through its online processing system or if online processing is unavailable, in accordance with the Provider Manual."  (emphasis supplied by Omniplus).  Omniplus argues that its position is further supported by the last sentence of 2.4, which states that, "[i]n no event will [Express Scripts] be liable for any Copayment."  Moreover, the contract does not specify that "all" or even a particular percentage of copayments must be collected, and it is silent on what collection efforts, if any, would be required to satisfy this provision of the contract if Express Scripts' interpretation of the contract controlled.

As for Section 2.2 of the Provider Manual, Omniplus again argues that the language, when read as a whole and considered in context, does not impose affirmative collection obligations upon Omniplus.  According to Omniplus, the plain meaning of this Section of the Provider Manual requires Omniplus only to "ensure that the correct Copayment is charged to the Member and is not changed or waived" and "not institute Member Copayment discount programs or otherwise alter a Member Copayment, unless such waiver or discount is required by law."

Omniplus argues that it did charge copayments (even if it did not always collect them) and did not change or waive them.

Omniplus thus reads the contract language to mean that it was not obligated to collect all copayments due and owing to comply with the provisions of the contract – all it was required to do was send a bill for the copayments.  Because the contract does not specify any particular efforts that must be undertaken or set any particular percentage threshold of collections that are required, the court cannot say as a matter of law that Omniplus breached the contract.  This is a fact question.  The jury will be able to consider all the evidence and determine whether Omniplus' collection efforts were sufficient to constitute performance under the contract.

Summary judgment is additionally inappropriate given the factual disputes regarding the circumstances of the termination.  Express Scripts' stated reason for terminating the contract was that Omniplus misrepresented that it did not waive or discount copayments.  But whether Omniplus' obviously lackluster collection efforts could amount to a waiver or discount of copayments under the contract is also a fact question.   The contract does not define what constitutes a "waiver" or "discount" of copayments.  But the ordinary definition of waiver – the intentional relinquishment of a right – applies in the absence of any contract-specific definition, and the jury can consider all the circumstances surrounding Omniplus'

collection efforts to determine if Omniplus intentionally gave up the right to collect – that is, waived copayments.

Omniplus claims that Express Scripts breached the contract by failing to give it 90 days notice and an opportunity for a review, as set out in Sections 5.1 and 5.2 of the Texas addendum, which incorporates Texas Insurance Code Sections 843.306 and 1301.057 and accompanying regulations (28 T.A.C. §§ 3.3703(a)(19), 3.3706(d), and 11.901(a)(4)). Even though the Texas statutes do not provide a private right of action as claimed in Count II, they are still relevant to the breach of contract claim to the extent they are specifically incorporated into the contract.[3] Express Scripts, on the other hand, points out that § 843.306(b)(3) specifies that the notice and review provisions of the statute do not apply to a case involving fraud or malfeasance, and Express Scripts argues that Omniplus' statement in the Provider Certification that it did not waive copayments constitutes fraud or malfeasance. This again is a question for the jury. The nature, adequacy, and extent of any notice and pre-termination proceedings that were or should have

---

[3] Notably, although Omniplus argues in its summary judgment papers that the Texas "Any Willing Provider" statute, Tex. Ins. Code Art. 21.5B § 2(a)(2), applies to this case and further limits Express Scripts' termination rights, this statute is not pleaded as a basis for relief in the complaint and cannot be injected into this case by virtue of summary judgment arguments. The Texas Addendum is specific as to the statute and regulations that are incorporated, and does not list any Willing Provider statute. Moreover, the statute would not apply to this dispute in any event, because there is no evidence in this case that Express Scripts is a health insurance policy or managed care plan, which is what the statute covers.

been provided to Omniplus are all issues which are dependent upon the underlying factual disputes.

Express Scripts' motion for summary judgment on the issue of Omniplus' damages claim fails for similar reasons. Whether Omniplus' damages might be limited in time or scope by the termination provisions in the contract is yet another issue dependent on many disputed factual issues.[4] Finally, Express Scripts' complaints about Omniplus' expert witness do not entitle it to summary judgment. Express Scripts did not seek to exclude or limit this expert's testimony, and its time for doing so has expired. In any event, such a motion would have been futile as these arguments go to the weight, not the admissibility, of the expert's testimony.

For all these reasons, I will deny Express Scripts' motions for summary judgment on Count I of Omniplus' complaint.

## C. Express Scripts' Counterclaim

In its counterclaim Express Scripts claims that Omniplus breached the contract by failing to collect copayments. Both sides make the same contract arguments discussed above, on which I have concluded numerous factual disputes

---

[4] To the extent that Express Scripts relies on my denial of preliminary injunctive relief, I remind Express Scripts that I expressly warned the parties that my rulings were only for purposes of determining whether preliminary injunctive relief was appropriate. The question of whether a party faces the threat of irreparable harm is entirely different from whether he is entitled to damages, which I pointed out when I denied the request for preliminary injunction.

remain.[5]  But Omniplus also argues that it is entitled to summary judgment because Express Scripts cannot show that it was damaged by any alleged breach, and damages are an essential element of a breach of contract claim under Missouri law.  *See Keveney*, 304 S.W.3d at 104.  I agree.  Even if I assume that Express Scripts can prove that Omniplus breached the contract, its only claim for damages fails as a matter of law, and so I will grant summary judgment on the counterclaim.

Where a party affirmatively demonstrates the absence of evidence on an essential element of the claim, summary judgment is appropriate unless the non-moving party comes forward with evidence demonstrating a genuine issue for trial. *See Millon v. JPMorgan Chase Bank, N.A.*, 518 Fed. Appx. 491, 496 (8th Cir. 2013) ("A party opposing a motion for summary judgment must show that admissible evidence will be available at trial to establish a genuine issue of material fact.") (internal quotation marks omitted) (quoting *Churchill Bus. Credit, Inc. v. Pacific Mut. Door Co*, 49 F.3d 1334, 1337 (8th Cir. 1995)); *Donat v. Trek Bicycle Corp.*, 2016 WL 297436, at *2 (D.S.D. Jan. 22. 2016); *Miller v. Cottrell, Inc.*, 2007 WL 3376731, at *6-*7 (W.D. Mo. Nov. 8, 2007).

Express Scripts claims that it was actually damaged because the contract obligates Omniplus to pay back all amounts Express Scripts paid it on any

---

[5] Because I granted leave for Omniplus to file its answer to the counterclaim out of time, Express Scripts' argument that Omniplus admitted all allegations in the counterclaim by failing timely to file a reply will be rejected.

prescription on which Omniplus failed to collect a copayment, plus a 15% "enforcement fee." Express Scripts relies on Section 5.1 of the Provider Manual as support for its claim, which states as follows:

> A Network Provider shall be deemed noncompliant when the Network Provider refuses to allow or cooperate with an audit and/or investigation, fails to provide [Express Scripts] with the requested documentation, fails to prepare for an audit or investigation, or is otherwise uncooperative, abusive or violates any terms of the Provider Agreement, including this Provider Manual. If Network Provider . . . is deemed non-compliant, an enforcement fee or $2,000 or 15% of the total final audit or investigation findings, whichever is greater, may be assessed. Non-compliance fees are in addition to any discrepancies identified. It is within [Express Scripts'] sole discretion to recoup 100% of the amount for the paid claims in question and offset any amount owed to Network Provider. [Express Scripts], in its sole discretion, may take further action up to and including termination of Network Provider for non-compliance.

Express Scripts has presented evidence that it paid Omniplus $25,801,707.10 for claims on which Omniplus did not collect copayments.[6] It seeks return of this amount plus an additional 15% "enforcement" fee, which it calculates as $3,870,256.10. Even assuming, without deciding, that Omniplus breached the contract and that the contractual provisions cited by Express Scripts could be properly construed to mean what Express Scripts argues, there is no evidence that Express Scripts was actually damaged in this amount by the breach it alleges.

By seeking a return of the amounts paid to Omniplus, Express Scripts is really asking the Court for the equitable remedy of rescission in the guise of breach

---

[6] Express Scripts was paid $26,758,341 by its clients for these claims.

of contract damages. This is not permissible under Missouri law, which allows "a victim of fraud" to *either* rescind a contract *or* recover damages, not both. *In re Usery*, 123 F.3d 1089, 1093 (8th Cir. 1997). As Express Scripts has not alleged a claim for rescission based on fraud, it is limited to recovery of actual damages based on its breach of contract theory. The problem is that Express Scripts has come forward with no evidence of actual damages. While the Court can imagine damages that might have properly been claimed by Express Scripts in this case – the costs of investigating Omniplus' failure to collect copayments, for example – it has not actually claimed any of these and has instead sought *only* the return of all monies paid. As discovery is now closed, Express Scripts cannot amend its damages calculations to claim actual damages where none have been claimed before. Express Scripts elected to stand on its insistence that it was entitled to a return of the monies paid and must be bound by this decision.

In an attempt to avoid summary judgment, Express Scripts argues that it suffered actual damages by pointing to the fact that the contract provides for recoupment and an enforcement fee. According to Express Scripts, it was damaged because the contract says it is entitled to collect these amounts as damages. Express does not explicitly argue that this is a liquidated damages clause, but a claim that the contract sets up specific damages in the event of any breach is, in fact, a claim for liquidated damages. "Missouri law distinguishes

between liquidated damages clauses, which are valid and enforceable, and penalty clauses, which are neither." *Monsanto Co. v. McFarling*, 363 F.3d 1336, 1344 (Fed. Cir. 2004). Under Missouri law, "[l]iquidated damages clauses are enforceable only if, at the moment the contract is entered into, the damages would be difficult to ascertain should the parties breach the contract." *AAA Uniform and Linen Supply, Inc. v. Barefoot, Inc.*, 81 S.W.3d 133, 137 (Mo. Ct. App. 2002). The amount fixed must also be a reasonable forecast of just compensation for the harm that would be caused by the breach. *Id.* at 137-38; *Diffley v. Royal Papers, Inc.*, 948 S.W.2d 244, 246 (Mo. Ct. App. 1997). Although liquidated damages are a replacement for recovery of actual damages, the non-breaching party nevertheless must have been harmed or damaged before a liquidated damages clause is triggered. *Paragon Group, Inc. v. Ampleman*, 878 S.W.2d 878, 881 (Mo. Ct. App. 1994).

That a contract may specify liquidated damages for a potential breach does not render it enforceable or mean that the non-breaching party has even been harmed in the first place. *See McFarling*, 363 F.3d at 1346-47 (noting that liquidated damages clauses may be unenforceable as a penalty "even though the parties in express terms have declared the contrary.") (internal quotation marks and citation omitted). Stated otherwise, the existence of a liquidated damages clause – even if valid – does not prove that a party was actually damaged so as to trigger its

enforcement. Here, the only evidence Express Scripts has put forward of its damages is the contract language. As this is not evidence of damages (at best it is only a way to calculate damages), Express Scripts' breach of contract counterclaim fails as a matter of law. Moreover, there is no evidence that the amount fixed – which, if awarded, would entitle Express Scripts to recover not only the entire amount it paid (and was then reimbursed for) but also a premium for prescriptions filled by Omniplus – is a "reasonable forecast for the harm caused by the breach" as opposed to an unenforceable penalty under Missouri law. *See Diffley*, 948 S.W.2d at 246. Because Express Scripts has failed to come forward with any evidence demonstrating that it suffered any damages from Omniplus' alleged breach of contract, Omniplus is entitled to summary judgment on Express Scripts' breach of contract counterclaim.

Conclusion

In sum, I will grant summary judgment to Express Scripts on Count II of the complaint, and I will grant summary judgment to Omniplus on Express Scripts' counterclaim. However, I will deny the remainder of the motions for summary judgment directed to Omniplus' breach of contract claim, as numerous factual issues remain.

I am very concerned that the parties have not fully considered the difficulties they will have in presenting this case at trial. This case ought to be settled, and I

urge the parties to once again attempt to resolve it and to consider returning to mediation if they think there is any chance that it might be successful.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment on the merits of plaintiff's claims [110] is granted only with respect to Count II of the complaint, and in all other respects is denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment on defendant's counterclaim [118] is granted, and the counterclaim is dismissed with prejudice.

**IT IS FURTHER ORDERED** that defendants' motions for summary judgment on its counterclaim [100] and for plaintiff's failure to show damages [115] are denied.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of February, 2016.